# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DARIN TYRONE MONK,

        Plaintiff,

v.                                                                                                       Case No. 09-CV-646

ENRIQUE LUY, SUSAN NYGREN,
DEPUTY WARDEN KEMPER, MAURICE KRASHIN,
JANE DOE AND JOHN DOE, Nurses,

        Defendants.

## DECISION AND ORDER

The plaintiff, Darin Tyrone Monk, who is incarcerated at Racine Correctional Institution, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis*, his motion to amend the complaint, his motion to appoint counsel, and for screening of the plaintiff's amended complaint.[1]

The plaintiff is required to pay the statutory filing fee of $350.00 for this action. *See* 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. The plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C.

---

[1] On October 9, 2009, the plaintiff filed a motion to amend complaint, along with a proposed amended complaint. Because the court has not yet screened the plaintiff's original complaint, the court will grant the plaintiff's motion to amend and screen the amended complaint. *See* Fed. R. Civ. P. 15(a)(1)(A) (Parties may amend once before a responsive pleadings is filed as a matter of course.).

§ 1915(a)(2), and has been assessed and paid an initial partial filing fee of $31.64. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum,* 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

2

*Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir.

2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); see also *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**PLAINTIFF'S ALLEGATIONS**

According to the plaintiff's amended complaint, he was first seen by Dr. Luy at the Health Service Unit (HSU) in December of 2007 for pain in his knees, right elbow, and foot. (Amended Complaint at 1). After this initial meeting, Dr. Luy prescribed Ibuprofen for the plaintiff's pain. *Id.*

Roughly a month later, on January 17, 2008, the plaintiff alleges that his pain became "more excruciating." He contacted HSU and complained that it hurt to "walk, stand, or sit for long periods of time, and that on a scale of 1 through 10 the pain is an 8." *Id.* at 2. Subsequently, the plaintiff was seen by HSU and was tested "for muscle problems." The plaintiff asserts that he was scheduled for a follow up appointment on February 12, 2008, but was not brought down to the appointment. That night, the plaintiff informed HSU that he was in extreme pain and that he was having trouble walking and getting up and down in his bunk. *Id.* at 5.

On February 14, 2008, the plaintiff was told that he was scheduled to be seen by the Health Services Manager (HSM). However, the plaintiff was not seen until more than a month later. During this time, the plaintiff filed three complaints with the

4

HSU alleging extreme pain, difficulty walking and climbing in and out of his bunk, and requesting to be seen by a doctor. *Id.* at 5-12.

On or around March 24, 2008, the plaintiff was seen by the defendant, Dr. Luy, and told him that he was in pain and that the ibuprofen prescribed was not working. Presumably, Dr. Luy maintained the plaintiff's course of treatment because, on April 19, 2008, the plaintiff contacted defendant Nygren stating that the ibuprofen "was not working." *Id.* at 12. As a result, Ms. Nygren placed the plaintiff on the list to see the doctor. On April 25, 2008, the plaintiff was seen by defendant Krashin and was told that "Dr. Krashin would order naproxen and place the plaintiff on a bottom bunk restriction." *Id.* at 17.

On May 5, 2008, someone from HSU told the plaintiff that there was no bottom bunk restriction on record for him, but that he was scheduled for a follow up appointment with Dr. Krashin. At this time, the plaintiff told HSU that he nearly fell out of his bunk because he was unable to put pressure on his knees. In response, the plaintiff was told that he was scheduled for a follow up appointment in two weeks. However, according to the plaintiff's amended complaint, he was not seen in HSU until June 4, 2008, nearly one month later. *Id.* at 20-21.

In June, the plaintiff again complained of extreme plain and told the doctor that the naproxen was not helping. Dr. Krashin ordered x-rays for the plaintiff's right knee. According to the plaintiff, Dr. Krashin diagnosed him with "mild degenerative joint disease." *Id.* at 22.

5

On June 30, 2008 the plaintiff submitted another complaint stating that he was in pain and that the medication prescribed was not working. On July 16, 2008, the plaintiff made a request to be seen by an outside doctor, but this request was denied. *Id.* at 23-28.

On July 30, 2008, the plaintiff was seen again by Dr. Krashin and reiterated that the course of treatment was not working. Apparently physical therapy was ordered as the plaintiff began physical therapy on his right knee on August 12, 2008. On the fourth visit, the physical therapist stopped treatment on the plaintiff and stated that he would inform the doctor that the plaintiff needs to see an orthopedic specialist. *Id.* at 30-31.

On September 10, 2008, the plaintiff submitted another complaint to the HSU complaining of pain and swelling. The plaintiff was seen by Dr. Krashin on September 25, 2008, and Dr. Krashin ordered a different pain pill in response to the plaintiff's complaints. The plaintiff received a three months supply of the new pain medication, ketoprofen. The plaintiff took this medicine until November 1, 2008, at which time he filed another complaint stating that the course of treatment was not working and asking about when he would receive his orthopedic appointment. *Id.* at 34-39.

On November 16, 2008, defendant Nygren responded stating that an MD appointment had been made. *Id.* at 40. On December 4, 2008, the plaintiff was seen on "sick call" by an unknown nurse and was given a referral to the doctor.

6

On December 5, 2008, Dr. Krashin x-rayed the plaintiff's left knee and ordered a steroid injection to the affected area. *Id.* at 43. On December 28, 2008, the plaintiff was in extreme pain and asked the HSU for "something for the pain" and again requested a bottom bunk restriction. The next day, an unknown doe responded that the plaintiff had an appointment for an injection in his knee in the next few weeks. *Id.* at 45.

The plaintiff's pain medication expired on December 25, 2008. On January 15, 2009, the plaintiff informed HSU that he was in extreme pain and again requested his steroid injection. He was told that he was scheduled to see the doctor at the earliest available appointment time. *Id.* at 45-47.

The plaintiff then contacted defendant Nygren by filling out an inmate request form, but did not receive a response. Subsequently, the plaintiff contacted defendant Deputy Warden Kemper stating that he was in pain and that Nygren had not responded to his medical needs. *Id.* at 48-49. The plaintiff received a response from Nygren on behalf of Deputy Warden Kemper on February 5, 2009, stating that he would receive his injection within one week. According to the plaintiff, Ms. Nygren also indicated that "she was aware that naproxen was not very effective, but this is all she can send." *Id.* at 50-51.

On February 17, 2009, the plaintiff made another complaint to HSU. On February 23, 2009, Dr. Luy, who, according to the plaintiff, was supposed to administer the plaintiff's steroid injection, called the plaintiff to HSU. However, the

7

plaintiff did not receive the injection and was instead given a tube of pain relieving rub and sent back to his housing unit. *Id.* at 52-53.

On March 15, 2009, the plaintiff contacted HSU again, indicating that the course of treatment was not effective. He was told that he had an appointment in April. The plaintiff made at least four more complaints before he finally was called to HSU for an appointment on April 29, 2009. This was more than seven weeks from his first complaint. *Id.* at 54-61.

An unknown nurse treated the plaintiff on April 29, 2009. He was again given Ibuprofen and pain relieving rub, as well as a referral was given to see an outside doctor. *Id.* at 61. On June 5, 2009, the plaintiff again contacted HSU, complaining of pain and stating that the pain was affecting his sleep and causing emotional distress. *Id.* at 62. The plaintiff was seen on sick call on June 6, 2009, and was told by an unknown nurse "there was nothing she can do [for me.]" *Id.* at 63.

The plaintiff filed a grievance against HSU complaining that pain in his knee went untreated for months. *Id.* at 60. According to the plaintiff, on April 23, 2009, the grievance was affirmed with modification. On June 26, 2009, two months after the plaintiff's grievance was affirmed, the plaintiff filed a § 1983 civil rights complaint. At the time the plaintiff filed his complaint, he still had not received the steroid injection, nor put on a bottom bunk restriction. *Id.* at 65.

The plaintiff requests relief for violations of his "Eighth Amendment right to be free from cruel and unusual punishment." *Id.* at 8. He requests relief in the form of

8

compensation for pain and suffering in the amount of $250,000, and he asks the court to grant him punitive damages in the amount of $250,000. In addition, the plaintiff asks that the court grant such other relief, as it may appear the plaintiff is entitled.

The plaintiff names the following defendants in this action: (1) Dr. Enrique Luy; (2) Susan Nygren, Health Services Manager; (3) Deputy Warden Kemper; (4) Dr. Maurice Krashin; and (5) Jane and John Doe – prison employees and nurses.[2] He submits four specific Eight Amendment medical care claims:

> (1) Defendants' failed to adequately investigate and diagnose the source of the plaintiff's pain (2) Defendants' ignored the plaintiff's complaints of pain by scheduling and rescheduling appointments weeks away (3) Defendants' violated Health Service policy and procedure that mandates that inmates are seen in a timely manner (4) Defendants' failed to consider plaintiff's complaints, follow through with treatment mandated by a physician, and that they delayed access to adequate medical care.

*Id.* at 8.

## ANALYSIS

To establish liability under the Eighth Amendment standard, a prisoner must show: 1) that his medical need was objectively serious; and 2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Chapman v. Keltner,* 241 F. 3d 842, 845 (7th Cir. 2001);

---

[2] The plaintiff has named John Doe and Jane Doe nurses and prison officials and described their involvement in the facts underlying his Eighth Amendment medical care claim. While he must eventually discover the names of the defendants, at the *in forma pauperis* stage of the proceedings a complaint is not subject to dismissal for failure to identify some of the defendants by name. *Billman v. Ind. Dep't of Corrs.,* 56 F.3d 785, 789 (7th Cir. 1995).

9

see also *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1996); *Zentmyer v. Kendall County, Illinois,* 220 F.3d 805, 810 (7th Cir. 2000).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters,* 111 F.3d 1364 (7th Cir. 1997)).

Here, the plaintiff asserts that he was suffering from a serious medical condition that was ultimately diagnosed as degenerative joint disease.  Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Gutierrez v Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The plaintiff has made sufficient pleading to meet this standard.  Over the course of nearly two years, the plaintiff complained consistently of excruciating pain in his knees.  In addition, he states that the pain affected several daily activities such as walking, sitting for an extended period of time, and climbing in and out of his bunk.

Next, the plaintiff's claim must meet the deliberate indifference standard.  A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

10

Case 2:09-cv-00646-JPS   Filed 12/23/09   Page 10 of 17   Document 7

Additionally, prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake,* 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir. 1991). Instead, a finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer,* 511 U.S. at 840-42). In determining whether an official's conduct rises to the deliberate indifference standard, a court may not look at the alleged acts of denial or delay in isolation; it "must examine the totality of an inmate's medical care." *Gutierrez,* 111 F.3d at 1375. In *Gutierrez*, isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. *Id.* Similarly, in *Dunigan v. Winnebago County,* the court found that "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. *Dunigan,* 165 F. 3d 587, 591 (7th Cir. 1999).

At this juncture, the facts alleged by the plaintiff stand in contrast to those in *Gutierrez.* Here, the allegations liberally construed in favor of the plaintiff are sufficient to allow the plaintiff to proceed under the deliberate indifference standard. *See Erickson,* 127 S. Ct. at 2200. Unlike in *Gutierrez*, the plaintiff's claims arise out of consistent incidents of delay and neglect over a nearly two-year period. Indeed, the plaintiff regularly made multiple complaints alleging that he was in excruciating

11

pain before being seen by a medical professional in the HSU.  In addition, the plaintiff claims to have been ordered medical treatment, such as a bottom bunk restriction and a steroid injection that, as of the date of filing, he had still not received.  Furthermore, according to the plaintiff, on at least three occasions he was forced to wait more than one month to receive medical treatment despite having filed several complaints of extreme pain and ineffectiveness of the medication he was prescribed.  According to the plaintiff, his complaints were not isolated, but instead reveal a pattern of behavior that lasted nearly two years.

Alternatively, this court must analyze whether the plaintiff has said too much. In *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003), the court found that the plaintiff was not alleging that he was denied medical care, but instead found that the plaintiff disagreed with the medical professionals about his needs.  However, the *Ciarpaglini* case is dissimilar to the instant case.  In *Ciarpaglini,* the plaintiff was "seen by prison doctors at least ten times in three months."  *Id.*  However, here the plaintiff is alleging that his medical care was delayed for more than one month on at least three occasions *and* that he was denied treatment that was ordered such as a bottom bunk restriction and a steroid injection in his knee.  (Plaintiff's Amended Complaint).  Thus, even if the court finds at this point that the plaintiff received prompt medical attention, the plaintiff still has claims that arise out of the denial of treatment that was ordered for him.  At this juncture, the court finds that the plaintiff

may proceed on an Eighth Amendment medical care claim against defendants Luy, Nygren, Krashin, Jane Doe and John Doe, for delay and denial of his medical care.

However, to the extent that the plaintiff attempts to hold any of the defendants responsible for the actions of their subordinates, his claims will not be allowed to proceed. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009) (Government officials may not be held liable, under *Bivens* or § 1983, for unconstitutional conduct of their subordinates under theory of *respondeat superior*; because vicarious liability is inapplicable, plaintiff must plead that each government official-defendant, through his or her own actions, has violated the Constitution).

Also, in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 [7th Cir. 1995]). In order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* The Seventh Circuit has held that "'[a] prison official's knowledge of prison conditions learned from an inmate's communication can . . . require the officer to exercise his authority and to take the needed action to investigate, and, if necessary, to rectify the offending condition.'" *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999) (quoting *Vance v. Peters*, 97 F.3d 987, 993 [7th Cir. 1996]).

13

In *Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009), the Seventh Circuit affirmed the dismissal of inmate complaint examiner for her role in rejecting the prisoner's untimely grievance. However, the court directed the district court to reinstate the plaintiff's claim against the head of the medical unit so that the plaintiff could take discovery to determine what she knew and what directions she gave. *Id.* at 594. Prison hospital administrators are in a position that "justifies the inference at this [complaint] stage of the proceeding that [they do] bear some responsibility for the alleged misconduct." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (internal citation omitted).

In this case, although defendant Kemper did not participate directly in the plaintiff's medical care, the plaintiff avers that he "contacted Deputy Warden Kemper" and informed Kemper that he was in pain, such that Kemper was aware of the plaintiff's condition. Thus, at this time, the court will allow the plaintiff to proceed on an Eighth Amendment claim against defendant Kemper for his action or inaction regarding the plaintiff.

**PLAINTIFF'S MOTION TO APPOINT COUNSEL**

Finally, the plaintiff has filed a motion to appoint counsel. Although civil litigants do not have a constitutional or statutory right to appointed counsel, the court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Pruitt v. Mote,* 503 F.3d 647, 653 (7th Cir. 2007); *Luttrell v. Nickel,* 129 F.3d 933, 936 (7th Cir. 1997) (citing *Zarnes v. Rhodes,*

64 F.3d 285, 288 (7th Cir. 1995)). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. *Pruitt,* 503 F.3d at 654; *Zarnes,* 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *Pruitt*, 503 F.3d at 654-655 (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

In this case, the plaintiff has not provided any indication that he has unsuccessfully attempted to obtain legal counsel on his own. Thus, he has not met the threshold burden. Moreover, the plaintiff has provided a detailed complaint setting forth his claims, which indicates he is competent to litigate this case himself. The plaintiff's motion for appointment of counsel will be denied.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #3) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to amend his complaint (Docket #5) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the Amended Complaint, a waiver of service form, and/or summons, and a copy

of this order, on the following defendants: Dr. Enrique Luy, Susan Nygren, Deputy Warden Kemper, Dr. Maurice Krashin, and Jane Doe and John Doe, nurses at the Racine Correctional Institution HSU, pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the Amended Complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**IT IS ALSO ORDERED** that the plaintiff shall submit all correspondence and legal material to:
>Honorable Judge Stadtmueller
>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.** It will only delay the processing of the matter.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of December, 2009.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge